**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARK ANTHONY HENDERSON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:18-cv-1548 (SRU) |
| | : | |
| CAPTAIN JAMES WATSON, | : | |
| Defendant. | : | |

**INITIAL REVIEW ORDER**

On September 13, 2018, Mark Anthony Henderson, an inmate currently confined at

MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut, brought a

complaint *pro se* under 42 U.S.C. §1983 against Captain James Watson for damages. Compl.

Doc. No. 1. Henderson claims that Watson retaliated against him, in violation of his First

Amendment right to free speech, and subjected him to inhumane conditions of confinement, in

violation of his Eighth Amendment protection against cruel and unusual punishment, in the early

months of 2018 while he was incarcerated at Cheshire Correctional Institution ("Cheshire"). *Id.*

at 13-14. On September 21, 2018, Magistrate Judge William I. Garfinkel granted Henderson's

motion to proceed *in forma pauperis*. *See* Order, Doc. No. 6. For the following reasons, the

complaint is dismissed in part.

I. Standard of Review

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil

complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to

state a claim upon which relief may be granted, or that seeks monetary relief from a defendant

who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not

required, the complaint must include sufficient facts to afford the defendant fair notice of the

claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II.     Factual Allegations

Henderson alleges the following facts. On January 5, 2018, Henderson spoke with Watson, the manager of the East 3 housing unit at Cheshire, about closing the four windows in the shower area because of the extremely cold temperature outside. Compl. ¶ 1. The cold winter air had been blowing into the shower area while Henderson and the other inmates in the unit were bathing. *Id.* at ¶ 2. Henderson wrote a follow-up request to Watson three days later but received no response. *Id.* He spoke with Watson again on January 9 during Watson's unit inspection tour and told him that the shower windows were still open. *Id.* at ¶¶ 3-4.

On January 30, Henderson became ill with cold and flu symptoms. Compl. ¶ 5. He filed a grievance against Watson and requested medical attention from clinical personnel. *Id.* On March 20, Henderson received medical treatment for his symptoms. *Id.* at ¶ 6. His grievance was later returned with a "compromised disposition." *Id.* at ¶ 9. On March 20, the first day of Spring,[1] after months of cold temperatures and winter storms, Watson ordered maintenance

---

[1]I take judicial notice of the fact that March 20, 2018 was the Spring Equinox. The First Days of the Seasons 2018, The Old Farmer's Almanac, https://www.almanac.com/content/first-

personnel to close the four windows in the East 3 shower area. *Id.* at ¶¶ 7-8. The next morning,

Henderson saw Watson in the East 3 housing unit enter the shower area and leave the unit

shortly thereafter. *Id.* at ¶¶ 10-11. A few hours later, an East 3 correction officer instructed

Henderson to pack up his property because he was being transferred to the East 2 housing unit.

*Id.* at ¶ 12. When Henderson went to shower in the East 2 unit later that evening, he noticed that

the windows in front of the first and second shower stalls were open. *Id.* at ¶ 13.

On March 24, 2018, Henderson filed another grievance alleging retaliation against

Watson. Compl. ¶ 14. His grievance was initially returned without disposition because

Henderson had not submitted and attached a written inmate request per administrative

regulations. *Id.* at ¶¶ 15-16. On April 3, Henderson wrote a request to Watson asking why he

had been transferred to the East 2 unit, but he received no response. *Id.* at ¶ 17. He later refiled

his grievance against Watson for retaliation. *Id.* at ¶ 19.

On April 13, 2018, Henderson was transferred from Cheshire to MWCI. Compl. ¶ 18.

After waiting thirty days for a response to his retaliation grievance, Henderson filed a Level 2

appeal, which was ultimately sent back to Cheshire and rejected. *Id.* at ¶¶ 22-26.

III.     Analysis

Henderson claims that Watson violated his Eighth Amendment protection against cruel

and unusual punishment and First Amendment right to free speech by subjecting him to cold

temperatures while showering from January to March 2018 and then transferring him to another

unit with the same conditions after he complained about the issue. I will permit Henderson's

Eighth Amendment claim to proceed against Watson in his individual capacity but dismiss the

First Amendment claim.

---

day-seasons.

A. <u>Claims Against Watson in his Official Capacity</u>

Henderson does not specify whether he is suing Watson in his individual capacity, his official capacity, or both. Nevertheless, it is well-established that a plaintiff may not sue a defendant in his or her official capacity for money damages. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). Because Henderson only seeks damages and no equitable relief, I will dismiss any and all claims against Watson in his official capacity. *See Watson v. Doe*, No. 1:15-CV-1356 (BKS) (DEP), 2016 WL 347339, at *41 n.5 (N.D.N.Y. Jan. 28, 2016) (dismissing all claims against defendants in official capacities when plaintiff does not seek declaratory or injunctive relief).

B. <u>Eighth Amendment Conditions of Confinement</u>

Henderson claims that Watson subjected him to inhumane conditions of confinement by failing to close the windows in the shower area of the East 3 unit during the cold winter months despite Henderson's complaints. Compl. at 13. After reviewing the allegations, I conclude that Henderson has stated a plausible Eighth Amendment claim.

The Eighth Amendment's prohibition on cruel and unusual punishment includes a prohibition on inhumane conditions of confinement. *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). The standard for an inhumane conditions claim contains both an objective and a subjective component: objectively, "the prison officials' transgression" must be "'sufficiently serious'"" and subjectively, "the officials [must have] acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.* with 'deliberate indifference to inmate health or safety.'" *Id.* at 185 (quoting *Farmer*, 511 U.S. at 834). "Under the objective element, while the Constitution 'does not mandate comfortable prisons,' inmates may not be denied 'the minimal civilized measure of life's necessities.'" *Alster v. Goord*, 745 F.

4

Supp. 2d 317, 335 (S.D.N.Y. 2010) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Thus, prison officials cannot "deprive inmates of their 'basic human needs—e.g., food, clothing,

shelter, medical care, and reasonable safety.'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 32

(1993)). "Claims of such deprivations are generally found to be sufficiently grave when they

involve the possibility of serious pain or injury." *Montalvo v. Koehler*, No. 90 Civ. 5218 (LJF),

1992 WL 396220, at *4 (S.D.N.Y. Dec. 21, 1992) (collecting cases). Prison officials also cannot

expose prisoners to conditions that may pose an unreasonable risk of serious damage to the

prisoners' future health. *Alster*, 745 F. Supp. 2d at 335 (citing *Phelps*, 308 F.3d at 185).

Here, Henderson claims that he spoke with Watson at least twice in January 2018 about

the windows in the East 3 shower area and wrote to him regarding the issue. *See* Compl. ¶¶ 1-3.

Watson failed to take any corrective action until March 20, when Henderson was transferred to

the East 2 unit. *Id.* at ¶ 7. The Second Circuit has held that the exposure of an inmate to bitter

cold temperatures for a prolonged period of time by prison officials satisfies the objective

component of the Eighth Amendment standard. *See Gaston v. Coughlin*, 249 F.3d 156, 164 (2d

Cir. 2001).

Because Henderson alleges that Watson was on notice of the open windows in the East 3

shower area as early as January 2018 and failed to close the windows for nearly two months, I

will permit Henderson's Eighth Amendment claim to proceed against Watson in his individual

capacity for damages.

C. First Amendment Retaliation

Henderson next claims that Watson retaliated against him for complaining about the

shower issue by transferring him from the East 3 unit to the East 2 unit at Cheshire. Compl. at

14. After reviewing the allegations, I conclude that Henderson has failed to state a plausible

retaliation claim against Watson.

"Prison officials may not retaliate against inmates for exercising their constitutional rights." *Riddick v. Arnone*, No. 3:11-CV-631 (SRU), 2012 WL 2716355, at *6 (D. Conn. Jul. 9, 2012). "To prevail on a First Amendment retaliation claim, [a prisoner] must establish (1) that the speech or conduct at issue was protected, (2) that the [official] took adverse action against the [prisoner], and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted); *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). "In the prison context, 'adverse action' is objectively defined as conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *O'Diah v. Cully*, No. 08-CV-941, 2013 WL 1914434, at *9 (N.D.N.Y. May 8, 2013) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)); *see also Ramsey v. Goord*, 661 F. Supp. 2d 370, 399 (W.D.N.Y. 2009) (prisoners may be required to tolerate more than average citizens before alleged retaliatory action against them is considered adverse). In order to allege causation, the prisoner must state facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)).

"Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient." *Riddick*, 2012 WL 2716355, at *6; *see also Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) ("virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act"). "Accordingly, plaintiffs in retaliatory motive cases

must plead 'specific and detailed factual allegations which amount to a persuasive case' or 'facts giving rise to a colorable suspicion of retaliation.'" *Moore*, 92 F. Supp. 3d at 120 (quoting *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001)).

In this case, Henderson claims that Watson transferred him from the East 3 unit to the East 2 Unit in retaliation for his complaints about the shower area in the East 3 unit.  Compl. at 14.  He alleges that, when he was transferred to the East 2 unit, he was once again forced to shower with open windows.  *See id.* at ¶ 13.  The transfer occurred within two months of Henderson's grievance against Watson regarding the showers.  *See id.* at ¶¶ 5, 11-12.  Although Henderson engaged in protected speech by filing a grievance against Watson and was subjected to the same conditions upon the transfer, there are no facts which would support an inference that Watson was personally involved in the transfer decision.  *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (plaintiff must show defendant's personal involvement to recover damages in section 1983 action); *Croswell v. McCoy*, No. 9:01-CV-00547, *Sharpe, Magistrate J.*, 2003 WL 962534, at *9 (N.D.N.Y. Mar. 11, 2003) (plaintiff failed to allege that defendant was involved in retaliatory transfer).  Even if he had, the allegations do not show that the January 30 grievance regarding the showers "was a substantial or motivating factor" in the transfer decision.  *Moore*, 92 F. Supp. 3d at 121.  Given the Second Circuit's caution regarding easily fabricated retaliation claims, I dismiss Henderson's First Amendment claim against Watson.

D.  Prejudgment Remedy

In his complaint, Henderson requests that I "[i]ssue a prejudgment remedy pursuant to [District of Connecticut] Local Rule 4(c)."  Compl. at 14.  Local Rule 4(c) authorizes a party to secure a prejudgment remedy ("PJR") "as permitted by, and in accordance with, the law of the State of Connecticut.  A signed complaint shall be filed before filing an application for PJR and

proposed Order to Show Cause." D. Conn. L. R. 4(c). "Under Connecticut law, a prejudgment

remedy is intended to secure the satisfaction of a judgment should the movant prevail." *SS & C*

*Technologies, Inc. v. Providence Inv. Management*, 582 F. Supp. 2d 255, 257 (D. Conn. Oct. 24,

2008) (citing *Cendant Corp. v. Shelton*, No. 3:06-CV-854 (JCH), 2007 WL 1245310, at *3 (D.

Conn. Apr. 30, 2007)). Such a remedy is appropriate only:

> [i]f [I], upon consideration of the facts before [me] and taking into account any
> defenses, counterclaims or set-offs, claims of exemption and claims of adequate
> insurance, find[] that the [movant] has shown probable cause that such a judgment
> will be rendered in the matter in the [movant's] favor in the amount of the
> prejudgment remedy sought. . . .

*Id.* (quoting Conn. Gen. Stat. § 52-278d(a)). Probable cause consists of "a bona fide belief in the

existence of facts essential under the law for the action and such as would warrant a man of

ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *Id.*

(quoting *Cendant Corp.*, 2007 WL 1245310, at *3).

"When considering a motion for a prejudgment remedy, [I] must weigh the probabilities

in light of the evidence presented, and determine if the movant has shown probable cause to

sustain the validity of [his] claim." *SS & C Technologies, Inc.*, 582 F. Supp. 2d at 258 (citing

*Dunleavey v. Paris Ceramics*, 47 Conn. Supp. 565, 569 (Conn. Super. 2002)). I must consider

the substantiality of the movant's claims and the strength of the evidence underlying the

opponent's defenses and "make a fair and reasonable prediction as to likely damages." *Id.*

(citations omitted).

Henderson's one-sentence-long request for a PJR was filed as part of his complaint and is

devoid any specific explanation of the relief sought. The current record, which consists only of a

complaint, is insufficient for me to determine the validity of Henderson's claims or reasonably

predict likely damages therefrom. Therefore, Henderson's request for a PJR is DENIED without prejudice subject to refiling at a later stage of litigation.

## ORDERS

(1) Henderson's Eighth Amendment claim for inhumane conditions of confinement may proceed against Watson in his individual capacity for damages. The First Amendment claim is dismissed.

(2) The Clerk shall verify the current business address for Watson with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to Watson at the confirmed address within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35) day** after mailing. If Watson fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and he shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) Watson shall file his response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claim recited above. He may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

(5) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(6) Henderson's request for a PJR is DENIED without prejudice subject to refiling at a later stage of litigation.

So ordered.

Dated at Bridgeport, Connecticut, this 5th day of November 2018.

<u>/s/ STEFAN R. UNDERHILL</u>
Stefan R. Underhill
United States District Judge